**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

JULIE BURDGE,

        Plaintiff,

v.                                                                     Case No. 2:18-cv-206-J-JRK

ANDREW M. SAUL,[1]
Commissioner of Social Security,

        Defendant.

_____

## **OPINION AND ORDER**[2]

### **I. Status**

Julie Burdge ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability income benefits ("DIB"). Plaintiff's alleged inability to work is the result of a retinal tear, floaters in the right eye, "left eye tear and detachment," eye fatigue, chronic double vision, eye muscle pain, a pinched nerve in the neck, sleep apnea, elevated liver enzymes, high cholesterol, depression, and anxiety. See Transcript of Administrative Proceedings (Doc. No. 12; "Tr." or "administrative transcript"), filed June 1, 2018, at 62-63, 74, 188 (capitalization and

---

     [1]     Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Nancy A. Berryhill as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

     [2]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 10), filed June 1, 2018; Reference Order (Doc. No. 17), entered July 10, 2018.

emphasis omitted). Plaintiff filed an application for DIB on November 24, 2015,[3] Tr. at 167, alleging a disability onset date of August 1, 2015, Tr. at 63, 74. The application was denied initially, Tr. at 62-71, 72, 89-91, and upon reconsideration, Tr. at 73-85, 86, 93-97.

On February 21, 2017, an Administrative Law Judge ("ALJ") held a hearing, during which she heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 33-61. Plaintiff was fifty-two years old at the time of the hearing. Tr. at 36. The ALJ issued a Decision on June 14, 2017, finding Plaintiff not disabled through the date of the Decision. Tr. at 15-28.

Thereafter, Plaintiff requested review of the Decision by the Appeals Council. Tr. at 166. The Appeals Council received additional evidence in the form of a brief authored by Plaintiff's counsel. Tr. at 4, 5; see Tr. at 295-98 (brief). On February 28, 2018, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On March 27, 2018, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff raises three issues: 1) "[w]hether the ALJ's finding that the opinion of treating physician Dr. [Sarada] Penukonda is entitled to 'limited weight' is supported by substantial evidence and comports with the requirements of 20 C.F.R. § 404.1527; SSR 96-2p"; 2) "[w]hether the ALJ's assessment of Plaintiff's credibility is supported by substantial evidence, as required by 20 C.F.R. § 404.1529(c)"; and 3)

---

[3] Although actually completed on November 24, 2015, see Tr. at 167, the protective filing date of the DIB application is listed elsewhere in the administrative transcript as November 18, 2015, see, e.g., Tr. at 62, 74.

[w]hether the [residual functional capacity ('RFC')] adequately accounts for Plaintiff's need for unscheduled breaks and driving limitations when viewed in conjunction with the record as a whole, as required by 20 C.F.R. § 404.1545(a)." Plaintiff's Memorandum in Support of Complaint (Doc. No. 18; "Pl.'s Mem."), filed July 13, 2018, at 8, 12, 15 (emphasis omitted). On October 1, 2018, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem.") addressing the issues raised by Plaintiff. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be reversed and remanded for further administrative proceedings.

On remand, a proper evaluation of Dr. Penukonda's opinions and Plaintiff's subjective complaints may impact the ALJ's RFC determination. For this reason, the Court need not address Plaintiff's third issue. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

## II. The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in

---

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 17-27. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since August 1, 2015, the alleged onset date." Tr. at 17 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: history of retinal detachment with multiple vitrectomy procedures; history of cataract; history of greater occipital neuralgia; history of neck pain; and monocular vision." Tr. at 18 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 19 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the RFC to "perform light work as defined in 20 [C.F.R. § 404.1567(b)] except she is limited to work that does not require binocular vision." Tr. at 20 (emphasis omitted). At step four, the ALJ relied on the testimony of the VE and found that Plaintiff "is unable to perform any past relevant work." Tr. at 26 (emphasis and citation omitted). At step five, after considering Plaintiff's age ("51 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ relied again on the testimony of the VE and found that

"there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 26 (emphasis and citation omitted), such as "sorter," "packer," and "cleaner," Tr. at 27. The ALJ concluded that Plaintiff "has not been under a disability . . . from August 1, 2015, through the date of th[e D]ecision." Tr. at 27 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As noted above, Plaintiff takes issue with the ALJ's analysis of Dr. Penukonda's opinions and the ALJ's evaluation of Plaintiff's subjective complaints. The undersigned addresses each issue in turn.

### A. Dr. Penukonda's Opinions

#### 1. Parties' Arguments

Plaintiff contends the ALJ erred in discounting Dr. Penukonda's opinions on the basis that "there were not adequate recent treatment notes from Dr. Penukonda to support the opinion." Pl.'s Mem. at 9 (citation omitted). Plaintiff argues that in evaluating Dr. Penukonda's opinions, "the ALJ did not perform the required analysis of considering the consistency of Dr. Penukonda's opinion with the evidence as a whole." Id. (citation omitted). According to Plaintiff, "[t]here is no evidence whatsoever from an examining source or from Plaintiff's testimony to contradict Dr. Penukonda's opinion." Id. at 10.

Responding, Defendant asserts that "[t]he ALJ properly gave little weight to Dr. Penukonda's opinion regarding Plaintiff's headaches and vision because Dr. Penukonda was an internist, Dr. Penukonda's opinion was not accompanied by detailed medical evidence, he last treated Plaintiff two years prior to the date of h[er] opinion, and the opinion was inconsistent with medical evidence from the relevant period." Def.'s Mem. at 5.

**2. Applicable Law**

The Regulations[5] establish a "hierarchy" among medical opinions[6] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5) (2006)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5); see also 20 C.F.R. §§ 404.1527(f), 416.927(f).

With regard to a treating physician,[7] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c)(2). Because treating

---

[5] On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Because Plaintiff filed her claim before that date, the undersigned cites the rules and Regulations that were in effect on the date the claim was filed, unless otherwise noted.

[6] "Medical opinions are statements from physicians or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"); 20 C.F.R. § 404.1513(a).

[7] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by

physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Schink v. Comm'r of Soc. Sec., — F.3d —, No. 17-14992, 2019 WL 4023639, at *7 (11th Cir. Aug. 27, 2019); Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Schink, 2019 WL 4023639, at *7; Hargress, 883 F.3d at 1305 (citation omitted); Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d

---

medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

### 3. Dr. Penukonda's Treatment and Opinions

Dr. Penukonda is Plaintiff's primary care physician and worked with Jennifer McBreairty, A.R.N.P, who also treated Plaintiff. See Tr. at 312-27, 427-36. The administrative transcript contains one treatment note from Dr. Penukonda (dated October 28, 2014), see Tr. at 312-17, and four from Ms. McBreairty (dated January 9, 2014; April 25, 2014; July 31, 2015; and November 20, 2015), see Tr. at 318-27, 427-36.

On February 24, 2017, Dr. Penukonda completed a Medical Statement Regarding Headaches ("Medical Statement"). See Tr. at 584-86. Dr. Penukonda stated Plaintiff suffers from migraine headaches and muscle tension headaches. Tr. at 584. Dr. Penukonda listed the following "independent medical impairments" as contributing or causing Plaintiff's headaches: "double vision, trying to focus vision to single vision when reading, light sensitivity from detached retina in [left] eye." Tr. at 584 (capitalization omitted). Dr. Penukonda noted that irritability and pupillary constrictions are symptoms associated with Plaintiff's headaches. Tr. at 584. According to Dr. Penukonda, Plaintiff experiences headaches daily, they last one to four hours, and they would require unscheduled work breaks. Tr. at 584-85. Dr. Penukonda opined that Plaintiff can drive only fifteen to twenty minutes at a time or her "double vision becomes uncontrolled." Tr. at 585 (capitalization omitted). Dr. Penukonda opined that Plaintiff is not able to work while suffering a headache. Tr. at 585.

### 4. Analysis

It appears the ALJ discounted the opinions in Dr. Penukonda's Medical Statement for two reasons: 1) the opinions are inconsistent with Dr. Penukonda's and Ms.

McBreairty's treatment notes; and 2) the opinions are inconsistent with the overall medical evidence. See Tr. at 24-25.

Initially, the ALJ stated that he did "not give great weight to Dr. [Penukonda's] February 2017 [Medical Statement] as it is not accompanied by detailed medical evidence and that source's treatment records do not extend beyond 2015." Tr. at 24 (citation omitted). The ALJ did "not find treatment records that are more recent than November 2015 from nurse practitioner McBreairty." Tr. at 24. According to the ALJ, Ms. Breairty's November 2015 treatment note "includes migraine in a past illness history, and notes that [Plaintiff] reported that she had pain around her eyes, but does not include migraine in the impression." Tr. at 24 (citing Tr. at 427). The ALJ found that Ms. McBreairty "noted that [Plaintiff] had been doing well, except that she continued to have issues with vision, and losing it on the left." Tr. at 24 (citing Tr. at 428).

Later, the ALJ found that the "medical records for the period under consideration do not show that [Plaintiff's] headaches persisted, or were expected to persist, at a level of severity that would reasonably preclude work within the [RFC]." Tr. at 25. The ALJ then cited a June 2016 treatment note from Dr. Joseph P. Walker[8] that "does not mention migraine headaches." Tr. at 25 (citing Tr. at 492). The ALJ went on to state that according to a January 2016 treatment note from Dr. Chance A. Wunderlich,[9] Plaintiff "tolerated treatment well and left the office feeling better." Tr. at 25 (citing Tr. at 539).

---

[8] Dr. Walker is a board-certified retina specialist, who treated Plaintiff. See Tr. at 492-94.
[9] Dr. Wunderlich is a chiropractor, who treated Plaintiff for her migraines. See Tr. at 498-568. The administrative transcript contains treatment notes from Dr. Wunderlich spanning December 2015 to December 2016. See Tr. at 497-568.

The undersigned finds that the ALJ erred in evaluating Dr. Penukonda's opinions because the ALJ's finding that the medical evidence is inconsistent with Dr. Penukonda's opinions is not supported by substantial evidence.

The administrative transcript is replete with medical records from Dr. Wunderlich indicating Plaintiff's headaches were persistent. See, e.g., Tr. at 513 (December 9, 2015 treatment note indicating that Plaintiff reported, "[M]y eye problems persist[ ] as well as headaches which concerns me"); Tr. at 515 (December 11, 2015 treatment note indicating that Plaintiff reported, "[M]y eye problems persist [ ] and [it] is very frustrating as well as headaches which concerns me); Tr. at 517 (December 14, 2015 treatment note indicating that Plaintiff reported, "I did better this weekend until yesterday afternoon then a migraine kicked in and I have been in bed until now"); Tr. at 521 (December 17, 2015 treatment note indicating that Plaintiff reported, "Another migraine kicked in yesterday afternoon which put me in a dark room in bed until this morning"); Tr. at 535 (January 14, 2016 treatment note indicating that Plaintiff reported, "My migraine headaches still happen 3-4 days a week and when they kick in the only relief I get is when I go into a dark room and sleep it off"); Tr. at 539 (February 1, 2016 treatment note indicating that Plaintiff reported, "I was doing pretty well after my last visit but I went to an Art Fair this past weekend with my husband and it sent me into another migraine headache episode"); Tr. at 539 (February 1, 2016 treatment note indicating that Plaintiff reported, "Some weeks are better than others but I still get my migraine headaches on average of 3-4 days a week"); Tr. at 543 (February 15, 2016 treatment note indicating that Plaintiff reported, "I have to hold my head so I can read and see to drive is what aggravates my neck and unfortunately triggers my migraine

headaches");[10] Tr. at 544 (February 22, 2016 treatment note indicating that Plaintiff reported, "I had a haircut on Friday . . . and the girl touching me around my head and neck . . . seemed to aggravate my neck again and trigger another migraine headache"); Tr. at 552 (April 25, 2016 treatment note indicating that Plaintiff reported, "When I get those migraines the only relief I get is [to] go into a completely dark room, put ice on my neck and sleep it off sometimes for a few hours and others until the next morning").

To treat her headaches, Plaintiff underwent forty chiropractic adjustments in the span of only one year (from December 2015 to December 2016). See Tr. at 499-500, 509-68. Although these adjustments provided some relief, it was temporary.[11] See Tr. at 509 (December 3, 2015 treatment note indicating that Plaintiff reported, "I did have some temporary relief after my visit the other day so I am encouraged, but it didn't last long"); Tr. at 511 (December 7, 2015 treatment note indicating that Plaintiff reported, "[T]hese last few visit[s] here ha[ve] helped to reduce neck pain and stiffness as well as headaches. . . . I still deal with headaches which are triggered by my eyes and double vision pretty much every day"). On January 6, 2016, Plaintiff did report that since starting treatment with Dr. Wunderlich, her "neck muscles and range of motion [are] so much better," and that "has helped a lot to relieve the intensity and frequency of [her] headaches and made it so that [she] can now function." Tr. at 529. This improvement, however, was evidently temporary as about one week later she reported her "migraine headaches still happen 3-4 days a week and when they kick in the only relief [she] get[s] is when [she]

---

[10] The ALJ briefly referenced this statement. See Tr. at 23, 25. As the undersigned finds below, however, the ALJ failed to explain how it was inconsistent with the evidence. See infra p. 17.

[11] In 2015, Plaintiff also received greater occipital nerve blocks, but the relief they provided was also temporary. Tr. at 416, 581 (duplicate).

go[es] into a dark room and sleep[s] it off." Tr. at 535; see also Tr. at 539 (February 1, 2016 treatment note indicating Plaintiff reported, "Some weeks are better than others but I still get my migraine headaches [a]n average of 3-4 days a week").

Moreover, when Plaintiff does feel better, it is because she avoids engaging in activities that affect her eyes and trigger migraines. See, e.g., Tr. at 552 (April 25, 2016 treatment note indicating that Plaintiff reported, "As long as I don't stray from my daily routine[,] I have figured out what I can and can't do because of my eyes"). On May 9, 2016, she reported, "[I]f I overdo it with activity, if [I] am on the computer or on my phone too much, try and read too much or drive a lot it still aggravates my eyes and can trigger a migraine headache." Tr. at 553; see also Tr. at 523 (December 21, 2015 treatment note indicating that Plaintiff reported, "The more active I am the more it triggers the migraine headaches which puts me back in a dark room in bed until the next morning"); Tr. at 567 (November 7, 2016 treatment note indicating that Plaintiff reported, "[A]s soon as I do too much it aggravates my chronic eye problems/double vision and as you know can trigger a migraine headache which puts me in bed"); Tr. at 568 (December 29, 2016 treatment note indicating that Plaintiff reported, "I know that I have to limit the strain on my eyes and if don't[,] I pay for it with a migraine").

For the foregoing reasons, the ALJ's Decision is due to be remanded for a reevaluation of Dr. Penukonda's opinions, taking into account all medical records.

## B. Plaintiff's Subjective Symptoms

### 1. Parties' Arguments

Plaintiff contends that "the ALJ provided little to no rationale for rejecting Plaintiff's subjective complaints." Pl.'s Mem. at 13. Plaintiff argues that "the ALJ provided no

explanation for rejecting Plaintiff's complaints of chronic and debilitating migraine headaches." Id. According to Plaintiff, "[t]he ALJ did not point to any activities performed by Plaintiff or inconsistent statements made to medical providers to contradict Plaintiff's testimony in this area." Id. Plaintiff asserts that the administrative transcript "consistently shows that Plaintiff reported debilitating double vision and migraines occurring after fifteen to twenty minutes of any activity requiring focus." Id. (citations omitted).

Responding, Defendant contends that "the ALJ provided substantial evidence for her assessment of Plaintiff's subjective allegations when she discussed Plaintiff's medical records noting that Plaintiff's objective testing reve[a]led lesser limitations." Def.'s Mem. at 12 (citation omitted). According to Defendant, "the ALJ specifically found that the medical records did 'not show that her neck pain or headaches persisted, or were expected to persist, at a level of severity that would reasonably preclude work within the' RFC." Id. (citation omitted).

**2. Applicable Law**

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223.

"When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). To reject a claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

The SSA recently issued new guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms. The SSA has "eliminat[ed] the use of the term 'credibility' from [its] sub-regulatory policy, as [the R]egulations do not use this term." Social Security Ruling 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017).[12] "In doing so, [the SSA has] clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." Id. Accordingly, ALJs are "instruct[ed] . . . to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." Id. "The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain assertions by applicants, especially as

---

[12] There was a prior version of SSR 16-3P in place at the time of the ALJ's Decision. See SSR 16-3P, 2016 WL 1119029 (Mar. 16, 2016). The same relevant language quoted in this Opinion and Order appears in this prior version. See id. at *1.

such assertions often cannot be either credited or rejected on the basis of medical evidence." Cole v. Colvin, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

### 3. Analysis

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e D]ecision." Tr. at 21. Elsewhere in the Decision, as noted previously, the ALJ found that the "medical records do not show that [Plaintiff's] headaches persisted, or were expected to persist, at a level of severity that would reasonably preclude work within the [RFC]." Tr. at 24. For the reasons stated above, this finding is not supported by substantial evidence.

Moreover, it is unclear what the ALJ relied on to find that Plaintiff's statements are "not entirely consistent" with the evidence of record. Tr. at 21. The ALJ did not articulate specifically any inconsistencies between Plaintiff's subjective reports and the other evidence of record, leaving only the boilerplate finding regarding Plaintiff's subjective symptoms. Tr. at 21. "In the absence of a cogent discussion of the credibility determination, the statement is too general to permit meaningful judicial review." McKinney v. Astrue, No. 8:08-cv-2318-T-TGW, 2010 WL 149826, at *3 (M.D. Fla. Jan. 15, 2010) (unpublished) (citing Marbury, 957 F.2d at 840 n.2; Walker v. Bowen, 826 F.2d 996, 1004 (11th Cir. 1987); Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985)).

Accordingly, the Decision is due to be reversed and remanded for reconsideration of Plaintiff's subjective complaints.

## V. Conclusion

For the foregoing reasons, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

   (A) Reevaluate the opinions of Dr. Sarada Penukonda and articulate the reasons for the weight given to them;

   (B) Reevaluate Plaintiff's subjective complaints, and if the complaints are rejected, clearly articulate the reasons for doing so;

   (C) If appropriate, reevaluate Plaintiff's residual functional capacity; and

   (D) Take such other action as may be necessary to resolve this matter properly.

2. The Clerk is further directed to close the file.

3. In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** in Jacksonville, Florida on September 23, 2019.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:
Counsel of Record